The two cases for argument this afternoon are 14-1767 and 14-1788, Acates Reference Publishing v. Apple. Mr. McGeary, the first thing you're going to tell me is whether I've been mispronouncing Acates all of these weeks. We pronounce it Acades. Acades, okay. I'm Vincent McGeary and I represent Acades. Today I hope to address two topics. The first is that Section 315B is reviewable after a final written decision, as it is in this case, and that it presents a proscription on the Board's ultimate authority to enter a final written decision. But isn't it procedural relating to the decision to institute? That's the language of 315. No, Your Honor, it is not procedural. It is a directive at the Patent Office that they may not institute the proceeding at all, and therefore it is a proscription on their authority. The Court had requested some supplemental briefing and we had the opportunity to present to the Court the Board's own decision in GTN-X, which was a post-grant review and a covered business method proceeding, wherein the Board construed very similar language for Section 325A of Chapter 32. In that particular proceeding... This isn't an ultimate question of validity, anticipation, obviousness. It relates to the decision to institute. That's the language itself, may not be instituted. And 314 says a decision whether to institute shall be non-appealable. 314D states that a decision whether to institute under this section shall be final and non-appealable. You mean there are different sections relating to institution? Isn't it one decision? There is only one section with respect to what the determination is made under 314, and that's 314A. It's very clear that the determination that's made under Section 314 is whether there is a reasonable likelihood of the petitioner prevailing on at least one challenge claim. So 314D only relates to making final and non-appealable that question, whether or not there is a reasonable likelihood. We are not appealing that there was a failure to look at whether or not there was a reasonable likelihood under 315. We are appealing that the final written decision, the ultimate determination by the board, was incorrect, and therefore, the Circuit Court has issued a view. Wait a minute. I don't know. Maybe I can't think of anything right now that's between that. But even if you're reading Versada as Versada, it deals with limits on the PTO's invalidation authority. So I thought your view was that this issue, the time limit 315 issue, comes within the PTO's invalidation authority. It is a limit to the PTO's invalidation authority, and therefore, we're doing… But aren't there things that are not within the invalidation authority that are beyond just the decision to institute? I'm just wondering if there can't be other matters that would not necessarily… I mean, your answer to Judge Laurie was that you're limiting 314 exclusively to just the decision to institute. 314D by its language is limited just to the decision to institute under Section 314, which is a reasonable likelihood threshold. So as we pointed out in our briefs, we can't come here before you and say, turn around some substantive finding because they got it wrong when they did the reasonable likelihood analysis, which is precisely the language under 314. But for 315D, the board's got to make an ultimate determination, irrespective of the reasonable likelihood standard, about whether or not it has the authority to move forward and to institute and issue a final written decision. So those are two different standards. No one is arguing that the board can base its decision on 315B based upon whether or not the petition shows a reasonable likelihood of success on that issue. It has to be ultimately decided. And the question is whether the actual statutory language is an ultimate prescription on the board's authority to issue the final written decision. And I submit that the board has made that determination. So tell us about GTNX. GTNX is Section... Go ahead and answer the Chief's question. Yeah, so GTNX, the board instituted a post-grant review, and then after the post-grant review was instituted, it came to light that the petitioner's parent company had filed an action against the patent owner, and therefore after the institution, the board took up the issue under Section 325A and determined that very similar language to 315B. 325A1 states that the director may not institute the post-grant review proceeding, and in GTNX they looked at the may not institute language as a jurisdictional non-waivable limit on its authority and dismissed the petition. I went up to a panel before this court, and on the writ of mandamus petition, this court looked at that construction, looking at that language, and said that was a reasonable interpretation of Section 325A. The operative language, may not institute the review, is the same operative language in 315B. Now, Mr. McKerry, the question I wanted to ask you was, in Versada, as we mentioned a moment ago, Versada held that we have the authority to review whether the PTAB has violated a limit on its invalidation authority. So that got me thinking, what is the authority of the PTAB to act in an IPR? Nobody has cited Section 316C. 316 is a section that deals with the conduct of inter-party review. 316C says, patent trial and appeal board. The patent trial and appeal board shall, in accordance with Section 6, conduct, quote, each inter-party review instituted under this chapter, close quote. But it seems to me that to the extent that the PTAB's authority is as reflected in 316C, to conduct each inter-party review instituted under this chapter, that the institution does go to the ultimate authority of the PTAB to act, as you are arguing. That's what I am arguing. But nobody is arguing 316C in any brief. Your Honor, the 316C, which assigns the conduct of the IPR to the patent trial and appeal boards, is one of the statutory sections with respect to what authority and what entity has the authority to conduct the IPR. If that's the section that sets forth the PTAB's statutory authority, that is, its authority is to conduct each inter-party review instituted under this chapter, then it seems to me that if a proceeding, an IPR is instituted improperly, that goes to the very authority of the PTAB to act. Similar to, and that brings it right under the holding of Versada. Under the holding of Versada, precisely, Your Honor, and consistent with the board's rulings in GTNX. We agree that this is an ultimate authority question, and if the board didn't have the authority, then it's reviewable under the Administrative Procedure Act before this court, after a final written decision is entered. So now that there is a final written decision respecting patentability, this court has jurisdiction, its reviewability is not precluded by any portion of the statute, and it must be reviewed under the Administrative Procedure Act. We submit that the one argument that was presented in the supplemental briefs, which I thought warranted us addressing right now, was the argument citing some cases by the petitioner that because 315B addressed a time limitation, that for some reason that makes it not an authority issue. However, given 316C, and furthermore, the cases that were cited there make very clear that when a court is reviewing that type of language, it needs to look at what the mandate Congress is giving if the time limitation is not met. And here the mandate, as the board itself ruled in GTNX, is you don't have authority to go forward with this inter-party review. So given the statutory language, given the GTNX decision, given the Versada case, and given 316C, it's clear that this court has jurisdiction and should review the final written decision in this particular case. We came before here on the final written decision on this issue to bring forward that there was no evidence in the record whatsoever presented by the petitioner to support the board's exercise of authority under 315B. All that was presented in the petition was a bare legal conclusion stating that  with any party that had been sued more than one year before the petitioner filed the petition. That is the language of 315B. We alerted the board that, in fact, there had been a lawsuit with other co-defendants and brought to the board's attention that there may indeed be a substantive legal relationship between the petitioner and those other defendants in that lawsuit. Nevertheless, no evidence was forthcoming. So on the issue of 315B and on the issue of privity or whether the petitioner shared a real party and interest relationship or a privity relationship with any of the co-defendants, the record provided by the petitioner is devoid of any evidence whatsoever. No one is arguing for the court that the bare legal statement or bare legal conclusion that the petitioner's lawyer put in the petition amounts to an evidentiary showing. No one is arguing that. Nevertheless, the argument is that under Rule 104 of the regulations, that's all that's required to meet the requirements of 315B. As we pointed out in our briefing, that would be basically an effort to completely rewrite the Administrative Procedure Act. It is the Administrative Procedure Act which sets forth the standard that this court will use to review final agency action. The final agency action here is the final written decision pertaining to Acadie's patent. And so 315B, being an ultimate authority issue and being part of the final agency action, must be supported by substantial evidence in the record. There is no substantial evidence in the record. In fact, the only evidence in the record that was presented was presented by Acadie's to demonstrate to the board that, in fact, there was likely a legal relationship between Acadie's and the petitioner. Notwithstanding our arguments, the board proceeded to place a burden of proof on Acadie's to actually prove the existence of this relationship. And we also demonstrated that after placing that burden of proof on us, the board acted arbitrarily and capriciously by denying us any discovery of the agreements that existed between the petitioner and its co-defendants. That was a record that such a legal relationship existed. The board recognized in its final written decision that the questions under 315B were highly fact-intensive. And the only way to weigh through those facts is with evidence. And on this record before this court, there is no evidence whatsoever supporting the exercise of authority under 315B. You're into your rebuttal. Let's hear from the other side, and we'll take the rest of your rebuttal. Ms. Cafferhan? Yes. Your Honors, may I please the court? Kassidy Cafferhan on behalf of the director. Here, Acadie's ignores the merits of the board's final written decision, finding every challenge claim invalid, and instead attempts to vacate that decision on a technicality by arguing its appeal as to whether or not the board properly instituted the appraisal. Well, the question of whether or not it's reviewable is a technicality, I guess, of some sort, but not really, not from where we sit here. So why don't we turn, I mean, starting with your friend's assertion that the position you're espousing here is not consistent with the position you took in GTNX. What do you have to say to that? Your Honor, actually, we do believe that GTNX is persuasive in favor of our position. In GTNX, which involves a CBM proceeding, much like the case did in Versada, in that case, there was a time bar issue as well. And there, the court found that there was actually no jurisdiction to review the decision that the board found that the petitioner did not have standing to bring that CBM proceeding. And so, in fact, the board found that it did not have jurisdiction to review that decision under 324E1, which is a parallel statutory provision as to 314B in an enterprise review proceeding. So I do think that GTNX is actually on point as to the director's position. And what about on review here? On review here, it's also on point. And the reason being is because the time bar limitation of 315B, as well as the time bar limitation that was in 325A1, is not an ultimate invalidation, it does not reflect the board's ultimate invalidation authority. And what about 316C? 316C also deals with the board's, once the board has instituted the enterprise review, yes, that decision is within the board's statutory authority. But isn't 316C a statement of what the PTAB's statutory authority is? But that is a statement of the PTAB's statutory authority once it has actually instituted enterprise review. If we take that as the board's- Well, if you take the statute literally, it says, let me see if I can find it here, it says the patent trial and appeal board shall conduct each interparty review instituted under this chapter. So if an IPR is not properly instituted, then the PTAB doesn't have the statutory authority to review it. If we take that position, Your Honor, then it would completely eviscerate the impact of Section 314D. But your point is that we lack jurisdiction to review that. That is correct, Your Honor. Because it relates to the decision to institute. That is correct, Your Honor. Under Section 314D, Congress mandated that the decision of the board of whether or not to institute interparties review shall be final and non-appealable. And this Court has confirmed this much in a series of decisions, including St. Jude and more recently in In Re Closo and in GPNX. And what about Versada, where we seem to have created an exception to that, and I don't want to use the word exception, that's all right, for the board matters dealing with the board's inherent authority. So why does this not fall within that category? The reason being is because in Versada, the Court first did acknowledge that 324E1 did create this bar for reviewability for institution decisions. But what they carved out was for decisions that related to the board's ultimate authority, ultimate invalidation authority. And the reason being that in that case, there was an issue which the Court found was reviewable was because the particular type of patent at issue was a CBN patent, or a covered business as a patent. And the type of proceeding that was at issue, the post-grant proceeding, was only available for certain types of patents. And therefore, because in reviewing that case, what the Court latched onto was this notion that there could be no proper pleading that could be filed that could bring that patent, if it wasn't a CBN patent, within the board's authority to invalidate. And so here, in this proceeding, there is no such issue. Well, clearly, this is not a CBN. I mean, there are a lot of distinctions between this. But certainly, they carved out an... Do you disagree that the holding in Versada is that when the decision has to do with a matter involving the board's inherent authority, that decision is reviewable on appeal? Do you disagree with that? That is the Court's finding, and it's correct. Okay. And why, given what the board said and what you've told us today about what the board concluded in GTNX about the jurisdictional question about involving a time limit, why does that not give us a clear path to say, given the board's own view about time limits being within their jurisdictional authority, that puts it within the Versada exception created under CBN? Well, I think we do have to look at how the court reasoned when it found that that particular provision provided the board's ultimate invalidation authority. And it's because... Right. I'm sorry. I may have confused you. What case are you talking about now? I'm talking about Versada. Okay. And in the Versada decision, the court focused on whether or not there was a proper pleading that could have been filed to bring that particular patent within the board's authority to invalidate. And in that case, if that patent was not a CBN patent, there was nothing that could be filed by the petitioner. Okay. So what in this case could have been done differently, could have been cured? Could there have been anything that had been cured during the process with regard to the one year and the privity issue? Yes. In this case, there could be. In this case, a third party, for instance, could have filed a petition seeking to review a Katie's patent. And Apple actually could have even filed under 315C a request for joinder, and the board in its discretion could have granted that motion. And so in that case, the patent at issue, the Katie's patent could still be brought within the board's authority to invalidate. So there is a proper pleading that could have been filed, and therefore it is not the type of invalidation authority. No, no, no, but that's not my question. Yeah, there could have been a proper one that could have been filed, but could there have been something that happened in the proceeding that could have cured or washed away the initial deficiency in the institution? I mean, technically, I guess Apple could have also filed an earlier petition if it was indeed time-barred, which in this case it wasn't. But if it was indeed time-barred, I mean, what my point is is that the patent itself could have been still subject to inter-parties review. Whether or not this particular petitioner brought that petition is not really an issue. Well, no, that was my question, though. Whether something could have happened or been done in this proceeding to the extent that Apple was itself time-barred, no. In this proceeding, no. But if there was another proceeding by a third party and Apple then sought to join that proceeding, Apple could still seek review of this particular patent. And the point is that the Board still could have thought, could have still exercised an invalidation authority in reviewing the patent that issue. Okay. Why don't we hear from you? I'm sorry. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, Joe Guerra for Apple. The critical distinction, Your Honors, is that the Visada Court did not talk about authority to institute and conduct proceedings. It used the unique phrase, limits on ultimate invalidation authority. And it did so, we submit, because it was talking about the ability of the Board to actually invalidate the patent that was forwarded, whether in the CBM review process you could actually invalidate a patent if it isn't a CBM patent. If you construe a limit on ultimate invalidation authority to be the limits on any authority to institute a proceeding, then you have just set Visada and Quazzo and the St. Jude line of cases on an inescapable collision course. Because Quazzo says... Well, not if the distinction is based on a statutory issue. Because we're not talking about a procedural or pleading defect, as in Quazzo, we're talking about a statutory time bar that applies in this case. Isn't that a distinction? It is a distinction on the facts of the cases, Your Honor, as Quazzo, but Quazzo says that the 314D must be read to bar review all institution decisions, even after a final written decision. That language will have now a gigantic gaping hole in it if every procedural impediment to a particular party bringing an action under the ICAR process is now considered to be a limit on ultimate invalidation authority. Well, it's not a procedural defect, it's a statutory bar. Your Honor, with respect, I don't think it is a statutory bar to the ability of the Board to invalidate a particular patent. Can I just ask you, I don't understand why the Board talks about a jurisdictional limit in GTNX, which is the Board didn't have jurisdiction because the issue itself was not timely. Why that doesn't fall into the same box you're saying that the CBM in Versada falls into, because the Board, at the end of the day, it ultimately goes to their ultimate authority to issue a decision in this case. But ultimate authority, the phrase is ultimate authority to invalidate, and it's not couched in case-specific language. It's the ability to invalidate a patent. In this case, Katie's patent could be invalidated at the behest of another party where there was no conceivable time bar limitation. That's the critical distinction. But if you read GTNX, which I'm sure you have, isn't the only way to reconcile that case with this case, to say the Board was telling us that they don't have, if the issue was untimely, that's a jurisdictional question, and they would not have the authority to ultimately invalidate the patent because it was time-bound. Your Honor, it's a limitation on their ability to act at the behest of a party, a particular party, not the ability to act on the patent. And if I may also point out... I'm sorry, so you're saying, just so I understand, so you're saying that as long as somebody else could bring the same suit... It's not a limitation on their ultimate authority to invalidate a patent. Because if somebody else could bring it, it's just a restriction on the ability of a party to institute a proceeding. And that does not go to the Board's own ultimate invalidation power. But if I could address your jurisdictional GTNX question, Your Honor. GTNX involves 325A1. That is not a time bar. That is a provision that says, if you elect to sue in district court, you can't come here. A time bar is what we have in 315B. And there is no analog in the post-parent review process to 315B. It is a statute of limitations. If you've been sued, you have the option to go to the PTO, provided you do it within a year. And the decision in Auburn Regional is quite explicit in saying all statutory time bars, even those that govern agency action, which is what was at issue in that case, are not jurisdictional and are waivable absent a clear statement in the text of the statute itself. And the clear statement, the court said, even in emphatic time limitations doesn't count. What we have here is a may not institute at false, far short of a clear statement rule required by Auburn Regional. So even if you are willing to take, you take the view that these are in fact authoritative limits on invalidation authority, this one isn't because it's waivable and non-jurisdictional. If I may turn to the merits, Your Honor, if you do conclude that you have jurisdiction, we urge you to affirm on a number of grounds. In our view, the statute is plain and unambiguous in assigning the burden of proof on the time bar issue to the patent owner. That follows for three basic reasons. Congress views the common law term in the statute, privity or privy, that comes with it, the associated rule that the burden falls on anyone who's seeking to preclude another from instituting a lawsuit. Second, 316 assigns a burden of proof on the petitioner to prove invalidity, and 312 assigns burdens of production on the petitioner to identify real partisan interest in evidence. The clear inference is Congress assigned the burdens it intended to assign to petitioners. You can't assume there's some sub-salencio additional burden that contradicts the common law rules. And third, the legislative history confirms that the proponents of this law understood that the patent owner would have the burden going forward. So for all of those reasons, the statute itself clearly and unambiguously says, patent owners, you think this guy's time bar is your duty to come forward with the evidence. And the absence of evidence in this record falls on Acades. Even if you disagree with my statutory analysis, at most, then, the statute is ambiguous and doesn't clearly assign the burden. And the PTO has resolved that ambiguity through regulations that adopt a scheme whereby the petitioner has to make a certification, the patent owner has to rebut it with evidence. There is nothing in the APA that says that that's an invalid interpretation of the IPR scheme. The test under Chevron is, if the statute's ambiguous and there's been authority granted to the agency to resolve the ambiguity, is its position reasonable? There is nothing unreasonable about a certification burden shifting scheme. There's not anything in the statute that they can point to that says that's impermissible. And under that scheme, we did what we needed to do, we put in the certification, and Acades came back and they referred to this condemnification clause in the publicly available agreement. We demonstrated in our brief that as a matter of law, that clause is irrelevant because in it, an estoppel is the indemnity. And we established, and Acades doesn't respond to our showing, that indemnities are not bound by judgments against the indemnitor. So they came forward with legally irrelevant evidence to try to show an estoppel, where they had the burden of proof, both we submit under the statute, and second, under the regulatory regime, that the PTO reasonably adopted if you conclude that the statute itself didn't mandate the allocation of the burden to the patent owner. So for those reasons, their claim that there's no substantial evidence to support the absence of a time bar is just a question-begging exercise about who had the burden of proof. And both under the statute and under the regulation, they had the burden as to that issue. Acades, excuse me, Apple's burden was to prove invalidity by a preponderance of evidence, and there is substantial evidence for that judgment. On the discovery issue, again, because all Acades came forward with a document that, even if it had been executed, would be irrelevant to the question of whether Apple could be estopped by a judgment against QuickOffice, means that they came forward with woefully inadequate showing. The Board requires consistently across a number of cases, including the ones they cite, it requires that you come forward with evidence already in your possession that tends to support your time bar. And in the two cases they cite, that evidence was the petitioner is an indemnitor in another case. Indemnification claims have been made. The indemnitor likely has the ability to control the litigation. The indemnification claims have been resolved in that other litigation. There is no evidence to support a single one of those facts. And the Board probably relied on the fact, which it has done in a number of other discovery disputes, that the whole motion was untimely. So, for all these reasons, if you get to the merits, there is, no pun intended, no merits to Acadie's claim that, in fact, this decision should be reversed. But if I could go back to where I started. The other, and the Director's Council referred to this, we are talking about one of the rationales in St. Jude, in Quaso, is when the Board, once the Board decides it's going to institute or not, if there's a mistake there, it's got to be egregious, it can be remedied by mandamus. But, once it goes forward, the appellate review scheme, including the provisions that authorize this Court's review of final written decisions, focus exclusively on the merits of the patentability determination. And that makes good sense, because the Board's gone to the bother of resolving the validity of claims. The public has an interest in knowing if these claims are valid or invalid. The Board has undertaken the effort, resolved that question, and a party has now put before you, saying, wipe that from the books. Is there anything wrong with it? They don't cite one reason to suggest that the patentability merits decision is wrong. They've completely abandoned their claims on that. And they're asking, essentially, to blow up that decision because of this asserted time bar, which, as we've explained, is not jurisdictional, even if GT&X is right about the A1 provisions. And, in all events, I submit, does not go to the Board's ultimate authority to invalidate patents. Thank you, Your Honor. Thank you. Let me address first the issue raised that the burden of proof is on Acades. I'm reading from page 18 of the Director's Brief. Acades mischaracterizes that the Board's decision to institute stating that the Board misinterpreted Section 315B and erroneously placed the burden on Acades to prove Apple's privity with a codify. The Board imposed no such requirement. It's the Director's view that the burden is not on Acades. This is only Apple's position that the burden of proof is shifted to Acades. Addressing it somewhat further, if we think about it for one second, the burden can't be on Acades because the final agency action is the action that the petitioner is asking for. And the APA says that that agency action requires substantial evidence. The evidence that's needed is the evidence that shows that the Board had authority, not that the Acades coming in and showing that the Board doesn't have authority because then the record as it is here is vacuous with respect to whether the Board had authority to proceed. Regarding the regulations, if the Patent Office were to adopt regulations that shifted the burden, it would be acting outside of the Administrative Procedure Act. A patent agency can't come in and do away with judicial review. The judicial review of the APA is directed at the court. The court applies that no matter what regulations an agency may adopt. The agency can't come in and change the power of the court to review an agency action. So that position has very little merit, has no merit. Regarding the GTNX decision, the Director pointed out that in GTNX, the court found it didn't have jurisdiction to hear that appeal. The reason was because there was no final written decision. He pointed out, like here, where you have 319 and 318, 319 says there must be a final written decision as to patentability before the court has jurisdiction. 328A and 329 had the same provisions in the covered business method. And because the Board did not ever issue a final written decision in GTNX, the court declined to hear the jurisdiction. That's not the case here. Here, like Rosado pointed out, we have a final written decision. 319 gives this court jurisdiction and gives it reviewability. CUSA only decided that the determination that was made that there was no reasonable likelihood because the grounds were not supported by the petition, that goes right to the reasonable likelihood to proceed. And that's exactly what 314B addresses. Completely different than the situation where we have a final written decision. Thank you. We thank all counsel and the cases submitted. And that concludes our proceedings for today. All rise.